**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ROBERT CIUFFI** | **CIVIL ACTION** |
| **VERSUS** | **NO: 09-3042-HGB-SS** |
| **MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION** | |

**REPORT AND RECOMMENDATION**

The plaintiff, Robert Ciuffi ("Ciuffi"), seeks judicial review, pursuant to Section 405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423.  Rec. doc. 1.

**PROCEDURAL HISTORY**

On May 1, 2006, Ciuffi provided the Commissioner with information regarding his claim for benefits.  R. 66.  An application, dated June 15, 2006, was submitted.  R. 61-64.  He contended that he became unable to work on June 30, 1996.  R. 61.  He reported that he was disabled because of a kidney and liver transplant.  R. 66.  He amended his alleged onset date to November 25, 2001.  R. 68.

On May 4, 2006, he completed a Work Activity Report (Self-Employed Person).  R. 80-83.  He reported that: (a) he was manager of the Bob Ciuffi apartment complex, (b) the gross income for June, 2006 was $2,000.00; (c) his duties included all decisions, including air conditioning and construction repairs; (d) he reduced his hours after his illness, but he continued to manage the

apartments; (e) as a result of his illness, he had three persons who helped with repairs and painting; and (f) he also worked part-time at the family's trailer park. Id. The Commissioner requested his tax returns for 1998 through the date of his application. R. 83. On July 28, 2006, his application was denied. R. 47-50. On November 14, 2007, there was a hearing before an Administrative Law Judge ("ALJ"). Rec. doc. 428-57. On December 6, 2007, the ALJ issued an unfavorable decision. R. 13-24. On January 10, 2009, the Appeals Council denied his request for review. R. 3-6. On August 17, 2009, Ciuffi filed a complaint. Rec. doc. 1. On September 3, 2009, the matter was submitted on cross-motions for summary judgment. Rec. docs. 9 and 11. Ciuffi is represented by counsel.

## STATEMENT OF ISSUES ON APPEAL

Ciuffi's request for judicial review raises the following issue:

Did the ALJ apply an improper legal standard to conclude at step one of the analysis that Ciuffi was engaged in substantial gainful employment?

## THE ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following findings relevant to the issues on appeal:

1. Ciuffi last met the insured status requirements of the Social Security Act on December 31, 2002.

2. During the period from November 25, 2001, the amended alleged onset date, through December 31, 2002, the date last ensured, there was no consecutive period of 12 months during which Ciuffi did not engage in substantial gainful activity. (20 CFR 404.1520(b) and 404.1571 et seq.).

3. During the period from November 25, 2001, through December 31, 2002, there was no continuous 12-month period during which Ciuffi did not engage in substantial gainful activity.

4. Ciuffi was not under a disability as defined in the Social Security Act, at any time from November 25, 2001 through December 31, 2002 for a period of disability and Disability Insurance Benefits. (20 CFR 404.1520(b)).

R. 18-24.

## ANALYSIS

a.     Standard of Review.

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000); Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971); Newton, 209 F.3d at 452. Alternatively, substantial evidence may be described as that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000). This court may not re-weigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's. Id.; Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The administrative law judge is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91, 113, 112 S.Ct. 1046, 1060 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. Villa, 895 F.2d at 1022; Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995).

To be considered disabled and eligible for disability insurance benefits, plaintiff must show

that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (1997).  The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.  Id. §§ 404.1520, 416.920; Newton v. Apfel, 209 F.3d at 453; Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 514 U.S. 1120, 115 S. Ct. 1984 (1995).[1]  The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.  Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry.  Id.  If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial

---

[1] The five-step analysis requires consideration of the following:
First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).
Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520(c), 416.920(c).
Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).
Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).
Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994) ("Medical-Vocational Guidelines").

gainful employment is available in the national economy, which the claimant is capable of performing. Greenspan, 38 F.3d at 236; Kraemer v. Sullivan, 885 F.2d 206, 208 (5th Cir. 1989). When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant." Id.; accord Selders, 914 F.2d at 618.

The Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [her] age, education, and work history." Martinez v. Chater, 64 F.3d 172, 174 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." Id.

b. Testimony at Hearing.

Ciuffi had cervical surgery in 1996. R. 434 and 448. At the time of the hearing he experienced pain in his neck and lower back. R. 448. He also experienced numbness in his hands and legs. R. 448. He had difficulty holding onto things. R. 448. In April 2006, he had a kidney transplant. R. 447.

Ciuffi lived in Harahan at the time of the hearing. R. 433. His wife purchased the house in Harahan in March of 2006. R. 443. The house was under her name, but he also signed the note. R. 444. His wife had worked for the Whitney Bank as a teller. R. 442. She had been on Social Security disability benefits since 1998 or 1999. R. 443-43. His only child went to Hannan High in Meraux. R. 441. His wife paid for his son's education. R 442.

Ciuffi's mother owned Myrtle Grove Properties, which was a mobile home trailer park. R. 436 and 441. He did maintenance work for his mother on her properties. R. 437. She paid him $200 per month. R. 441. This income ended with Hurricane Katrina. R. 441. He collected

unemployment benefits after Hurricane Katrina. R. 449.

From 1971 through Hurricane Katrina, he owned the Bob Ciuffi Apartments in Chalmette, Louisiana. R. 434 and 452. He ran the business and collected the rents from his apartments until the storm, when they were wiped out. R. 437, 440 and 441. He lost his records in the storm. R. 444.

Ciuffi filed income tax returns for his business. R. 434-35. The returns were prepared by a CPA. R. 436. He had taxable income of $1,986 in 2002 and $3,655 in 2003. He did not have any taxable income in 2001 and 2004. R. 443. The IRS only provided him with summary sheets of his income tax records. R. 443.

After 1996, Ciuffi was not able to make a profit on the apartment buildings because he could not do the maintenance work and he had to hire people to do it for him. R. 444. Before 1996, he did the painting, air conditioning, carpet and flooring work and other maintenance required on the apartments. R. 444-45. Since 2001, he was required to hire people to do the maintenance work to prepare an apartment for a new tenant. R. 445. After 2001, he tried to do the maintenance work but he could not. R. 446-47. After 2001, he was involved in working with his apartments about four days a week. R. 447.

Ciuffi lost money on the business. R. 435. He stayed at it because it was his only living. R. 435 and 436. All of his living expenses were run through the apartment business. R. 436. He had a 1990 Ford pick-up until Hurricane Katrina. R. 435. His wife also had a car. R. 435. The income from the apartments paid the notes on his vehicles. R. 436.

Between November, 2001 and Hurricane Katrina, Ciuffi cleared about $700 to $800 per month and sometimes maybe $1,000 per month if he did not have any maintenance work that month.

6

R. 449. If all of the units were occupied, his monthly rental income was about $2,600. R. 437. After expenses, he cleared about $1,450 per month. R. 439. When a tenant moved out, he incurred expenses to prepare the unit to rent to a new tenant and his deposits failed to cover all the expenses. R. 439.

In response to follow-up questioning from the ALJ, Ciuffi testified that almost every day for ten years there were repairs going on in at least one of the apartments for many hours and he was paying someone $10 to $15 per hour to do this work. R. 449-50. The repairs in the apartments included when an air conditioning unit went down or a stove would short out or catch fire. R. 450-51. Repairs were required at least three times a week. R. 450-51.

The vocational expert described Ciuffi's work as an apartment house manager as light duty skilled work. R. 454. The maintenance repair work that he did was classified as medium duty skilled work. R. 454. His work collecting the rent and keeping the records on the apartments was included in the duties for an apartment manager. R. 454.

c.   Other evidence.[2]

Ciuffi's earnings record reflects that the most recent covered earnings were for 1997. R. 51. There were no covered earnings for 2001 through 2005. R. 52. The records from the Internal Revenue Service reflected no taxable income for 2001, 2004 and 2005. For 2002, the taxable income was $1,986.00; and for 2003, it was $3,655.00. R. 421-25.

d.   Plaintiff's Appeal.

Issue. Did the ALJ apply an improper legal standard to conclude at step one of the analysis that

---

[2] The ALJ determined that from November 25, 2001, the alleged onset date, through December 31, 2002, the date last insured, Ciuffi was engaged in substantial gainful employment. R. 18 and 21. Ciuffi's application was denied at the first step of the evaluation process. 20 C.F.R. §§ 404.1520(b), 416.920(b). The only issue raised by Ciuffi on this appeal relates to this finding. Rec. doc. 9 at 4. His medical condition is not an issue on this appeal.

Ciuffi was engaged in substantial gainful employment?

Ciuffi contends that the ALJ ignored 20 C.F.R. § 404.1082(a) which provides that, "[y]our rentals from real estate . . . and the deductions attributable to the rentals are excluded in figuring your net earnings from self-employment, unless you receive the rentals in the course of trade or business as a real estate dealer." Id. He argues that the regulation clearly prohibits rental income from any determination of substantial gainful activity ("SGA") at step one of the sequential evaluation.

The Commissioner argues that the ALJ properly analyzed Ciuffi's work activity under 20 C.F.R. § 404.1575. It contends that 20 C.F.R. § 404.1082 does not apply to SGA determinations. Instead it is concerned with calculating earnings for the purpose of Social Security coverage.

Part 404–Federal Old-Age, Survivors and Disability Insurance is divided into subparts. For example, subpart B is concerned with insured status and quarters of coverage. Section 404.1082 is under Subpart K–Employment, Wages, Self-Employment, and Self-Employment Income. Section 404.1001 contains the introduction for Subpart K. It states that:

> (4) If you work for yourself, you are self-employed. The subpart explains our rules on the kinds of self-employment that are <u>covered</u> and the kinds that are not.
>
> (5) If you are self-employed, <u>your covered earnings</u> are called self-employment income which is based on your net earnings from self-employment during a taxable year. This subpart explains our rules on <u>the kinds of earnings that are covered as net earnings from self-employment and the kinds that are not</u>. We also explain how to figure your net earnings from self-employment and determine your self-employment income which is the amount that goes on our records.

20 C.F.R. § 404.1001(a)(4) and (5)(emphasis added). Within Subpart K are subheadings for self-employment and self-employment income. Section 404.1065, which is found under subheading for self-employment, states that:

> For an individual to have <u>self-employment coverage</u> under social security, the individual must be engaged in a trade or business and have net earnings from self-employment income for social security purposes. The rules explaining whether you are engaged in a trade or business are in §§ 404.1066 through 404.1077.

20 C.F.R. § 404.1065 (emphasis added). Sections 404.1080 and 404.1082 are found under the subheading for self-employment income. Section 404.1080 states that:

> If you are self-employed, you must first determine the amount of your net earnings from self-employment before figuring the amount of your earnings that count for social security purposes. . . . Subject to the special rules in §§ 404.1081 through 404.1095, the term *net earnings from self employment*– . . . ."

20 C.F.R. § 404.1080(a)(emphasis in original).

These provisions of Subpart K of Part 404 demonstrate that Section 404.1082 is one of the special rules for determining net earnings from self-employment which are required for self-employment income to have covered earnings and be eligible for social security benefits. There are no references in Section 404.1082 or any of the other provisions of Subpart K regarding SGA. There is no merit to Ciuffi's argument that the SGA issue should have been resolved under Section 404.1082.

The only issue raised by Ciuffi is whether the ALJ employed the proper standard. The proper standard is found in Section 404.1575. This section provides that the Commissioner will determine whether a claimant is engaged in SGA by application of one of three tests. 20 C.F.R. § 404.1575(a)(2). The ALJ found that, pursuant to test one, Ciuffi engaged in SGA during the period from the alleged onset date, November 25, 2001, through the date last insured, December 31, 2002. R. 21-23. Because the ALJ determined that it was not possible to concretely document Ciuffi's income and expenditures for the period at issue, the ALJ also found that, pursuant to test two, he engaged in SGA during the period. R. 23-24. The ALJ found Ciuffi's statements were not entirely

credible. R. 21. The ALJ concluded that:

> [I]t was implausible that an individual who is self-employed and has no other source of significant income would continue to operate a business that was losing money for almost 20 years unless there were other advantages (such as tax advantages) to be derived from the constructive losses. The claimant has not acknowledged any such reasons for operating a business that he alleges lost money for many years.

R. 21. Ciuffi has not challenged the ALJ's finding on credibility. He does not question whether there is substantial evidence to support the ALJ's findings that, pursuant to tests one and two, he engaged in SGA from November 25, 2001 through December 31, 2002.

## RECOMMENDATION

Accordingly, IT IS RECOMMENDED that Commissioner's cross-motion for summary judgment (Rec. doc. 11) be GRANTED, and Ciuffi's motion for summary judgment (Rec. doc. 9) be DENIED

## OBJECTIONS

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 26th day of October, 2009.

SALLY SHUSHAN
United States Magistrate Judge